**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

TOM SHALOM, *et al.*,

Plaintiffs,

v.

BASHAR MASRI, *et al.*,

Defendants.

Case No. 1:25-cv-23837-DPG

**JOINT PLANNING AND SCHEDULING REPORT**

Pursuant to Fed. R. Civ. P. 26(f) and Local Rule 16.1(b)(2), the parties respectfully submit this Joint Planning and Scheduling Report addressing the topics set forth in Local Rule 16.1(b)(2):

**A. Likelihood of Settlement:** At present, the parties do not believe that settlement discussions would be productive.

**B. Likelihood of Appearance in the Action of Additional Parties:** At present, Plaintiffs do not anticipate joining any additional Defendants. Plaintiffs may join additional Plaintiffs consistent with the scheduling order in this case; Defendants reserve all rights to oppose any motion for joinder. The parties do not otherwise anticipate that additional parties will appear in this action.

**C. Proposed Limits on Time for Joinder and Amendments, Motions, and Discovery:** Proposed deadlines are set forth in the parties' respective attached proposed scheduling orders. While the parties are largely aligned on the amount of time needed for fact discovery, Defendants believe that Plaintiffs' proposal for rebuttal experts to be due just six weeks after opening expert reports be due is too short. Defendants are amenable to a longer fact discovery period to the extent that Plaintiffs require it absent a partial stay of discovery, as indicated herein.

**D. Proposals for Simplification of Issues:** The parties have conferred but have been unable to agree on the appropriateness of a bellwether structure for this action. Below, the parties set forth their respective views.

**a. *Plaintiffs' Position:***

Plaintiffs believe that the most efficient and cost-effective way to manage discovery and trial of this matter is to employ a bellwether structure. This action is brought by 342 American victims (and their families and estates) of the October 7 Attack and its aftermath. As discussed further below, in similar mass tort cases involving very large numbers of plaintiffs (including Anti-Terrorism Act ("ATA") cases specifically), courts (including courts in this District) have recognized the utility of representative bellwether structures in order to streamline discovery and ensure that a just resolution can be achieved on a reasonable timeline. Here, should individualized discovery and trial take place with respect to all Plaintiffs simultaneously—including depositions, production and review of potentially voluminous medical and mental-health records, and complex expert damages analysis—discovery could not be completed on anything close to the deadlines proposed in either party's proposed schedule, and trial would necessarily extend over several months, not weeks or days. Instead, the Court should employ some form of bellwether structure, in which Plaintiff-specific discovery and the first trial are limited to a representative group of bellwether Plaintiffs and the remaining Plaintiffs' damages claims are deferred. To that end, Plaintiffs have proposed a deadline for the parties to submit joint (or competing) bellwether proposals to the Court, and corresponding deadlines for the remainder of the schedule assuming that such a bellwether proposal is ultimately adopted.

Bellwether trials are among the "special procedures for managing potentially difficult or protracted actions that may involve complex issues [or] multiple parties" contemplated by Fed. R.

Civ. P. 16(c)(2)(L), and courts may order them under Fed. R. Civ. P. 42(b) "[f]or convenience, to avoid prejudice, or to expedite and economize." *See In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 00-cv-1898 (SAS), 2007 WL 1791258, at *2 (S.D.N.Y. June 15, 2007); *see also In re Deepwater Horizon Belo Cases*, No. 3:19cv963, 2020 WL 6689212, at *1 n.1 (N.D. Fla. Nov. 4, 2020) (describing the benefits of the bellwether-trial process); *Auchard v. Tenn. Valley Auth.*, No. 3:09-CV-54 (E.D. Tenn. Feb. 1, 2011) (explaining that a court's authority to order a bellwether trial is rooted in Federal Rule of Civil Procedure 42). Courts in ATA cases routinely adopt this approach to ensure a maximally efficient, and just, resolution.

For example, in *King v. Habib Bank Ltd.*, No. 20-cv-4322 (LGS) (S.D.N.Y.), a consolidated ATA action brought by approximately 350 plaintiffs, the court granted the parties' joint request to "adopt a bellwether approach to discovery and trial," while deferring "the claims of all remaining plaintiffs (including discovery)." Dkt. No. 72 at 1-2. In *Troell v. Binance Holdings Ltd.*, No. 24-cv-7136 (JAV) (S.D.N.Y.), the court rejected a demand for questionnaires from every plaintiff before bellwether selection, explaining that "to do discovery in order to streamline discovery is just backwards." Dkt. No. 124 at 46:10-17. In *Linde v. Arab Bank, PLC*, after a single jury determined liability, the court scheduled a bellwether damages trial for a subset of the plaintiffs. *See* No. 04-cv-2799 (BMC), 2016 U.S. Dist. LEXIS 155567, at *2, 5 (E.D.N.Y. May 24, 2016), *vacated on other grounds*, 882 F.3d 314 (2d Cir. 2018). And in *In re Chiquita Brands International, Inc., Alien Tort Statute and Shareholder Derivative Litigation*, this Court issued an order directing the parties to hold two bellwether trials encompassing a total of 12 cases. No. 08-md-01916-KAM, Dkt. No. 1361 at 3-4 (S.D. Fla.).

Here, Plaintiffs allege that every injury Plaintiffs sustained was caused by Hamas and that Defendants aided and abetted the attacks in which Plaintiffs were injured by knowingly providing

substantial assistance to Hamas. Thus, a verdict in favor of any subset of bellwether Plaintiffs will resolve the core liability issue for all Plaintiffs and provide valuable insight into the range of damages likely to be imposed in future trials.

A bellwether structure is also the humane course. The October 7 Attack occurred barely three years ago, and Plaintiffs' loss remains fresh and raw. Courts have recognized the "enormous emotional cost" to terror victims of recounting their losses, *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 675 F. Supp. 2d 104, 111 (D.D.C. 2009), aff'd, 843 F.3d 958 (D.C. Cir. 2016), and have structured proceedings to "avoid causing further hardship" to them, *Karcher v. Islamic Republic of Iran*, 396 F. Supp. 3d 12, 65 (D.D.C. 2019). Requiring all 342 Plaintiffs to sit for depositions and open their intimate medical and psychiatric histories in the absence of a bellwether structure would impose a heavy and *unnecessary* burden on people who have already suffered enormously, particularly because that information would not be relevant to the majority of Plaintiffs whose claims will not be tried first. Nor is it needed to resolve liability, which turns almost entirely on common evidence: what Defendants did, what they knew, and how their conduct assisted Hamas's attacks. Simply put, a bellwether structure is an appropriate, available, and highly preferable means to ensure the fair adjudication of this case while conserving the Court's and the parties' time and resources.

Plaintiffs do not believe Defendants' objections warrant deferring this issue. First, there is no inconsistency between Plaintiffs' earlier opposition to a stay of all discovery and their advocacy for a maximally efficient discovery schedule now. Rather, it is Defendants' position—that as long as discovery is going to proceed, it may as well be unnecessarily burdensome and expensive—that should be rejected. Whether now or later, a bellwether structure was always going to be the most efficient way to conduct discovery and ultimately try this case, and nothing about Plaintiffs'

position (and the Court's decision) that discovery should begin now contradicts that. Indeed, limiting discovery to bellwether Plaintiffs also benefits Defendants, who will not have to go to the time and expense of unnecessarily taking discovery from 342 Plaintiffs located around the United States and the world.

Similarly, Defendants' concerns about fairness do not change this calculus. Defendants and Plaintiffs are not similarly situated from a discovery perspective: while each Defendant possesses information that is necessary to determine that Defendant's liability, the same is not true of Plaintiffs; Defendants' liability on the core issues can be resolved without full discovery from each Plaintiff, as those core issues turn on Defendants' conduct. In any event, the scope of discovery turns not on reciprocity, but on what is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Those considerations support some form of bellwether structure here. Requiring full discovery of every Plaintiff now would add unnecessary cost, delay, and burden, falling disproportionately on Plaintiffs and the Court.

Finally, Defendants raise two principal objections to a bellwether structure: (1) that some Plaintiffs might be dismissed from the case and (2) that too little is known about Plaintiff-specific issues to effectively choose bellwether Plaintiffs at this stage. As to the first objection, the possibility that a subset of Plaintiffs might be dismissed from the case makes a bellwether structure *more* beneficial, not less—whereas Defendants' proposal to take full discovery of all Plaintiffs is hard to reconcile with their prediction that some of them will be dropped at the motion-to-dismiss stage. And as for Defendants' concern about selecting bellwether Plaintiffs in a "vacuum,"

Plaintiffs' proposal is designed to address that concern. Again, Plaintiffs have asked only that the Court adopt a bellwether structure in concept and set a deadline by which the parties would meet and confer and submit joint or competing bellwether proposals. Identifying the categories of Plaintiffs that are relevant to bellwether selection is precisely what that process is for, and that process would be straightforward here. The Amended Complaint sorts Plaintiffs' claims, which arise from the injuries to 85 families, into a handful of readily identifiable groups: (1) hostages, both murdered and surviving, and their estates and families; (2) other decedents and their estates and families; (3) individuals who were physically and psychologically injured, and their families; and (4) individuals who were psychologically injured, and their families. Those groupings, together with the basic information concerning the dates, locations, and circumstances of injury or death, provide a sound basis on which to select a representative group of bellwether Plaintiffs. To the extent Defendants contend that particular Plaintiffs possess information relevant to liability, nothing about a bellwether structure would prevent Defendants from seeking targeted liability-related discovery from those individuals on an appropriate showing. That does not necessitate full discovery of all 342 Plaintiffs now.[1]

Plaintiffs therefore propose that the parties meet and confer and thereafter submit their respective (or joint) positions on an appropriate bellwether trial structure by the deadline proposed in Plaintiffs' proposed schedule. If the Court declines to adopt a bellwether structure, Plaintiffs

[1] The two cases Defendants cite are inapposite. *Adams* was a product-liability action by 166 plaintiffs in which general causation was hotly contested, and the defendant needed plaintiff-specific discovery into potential alternative causes of each plaintiff's injuries before representative categories could be identified. *See Adams v. Deva Concepts, LLC*, 2023 WL 6518771, at *6-7 (S.D.N.Y. Oct. 4, 2023). *Miller* involved "large groups of plaintiffs alleging injuries suffered from many different alleged terrorist attacks," *Miller v. Arab Bank, PLC*, 2022 WL 5264899, at *2 (E.D.N.Y. Sept. 26, 2022). This case, by contrast, involves Plaintiffs injured predominantly on October 7, 2023, or in its aftermath.

respectfully submit that discovery cannot be completed on their proposed timeline, and that the parties will need to confer further and submit a revised schedule to reflect the need for individualized discovery of all 342 Plaintiffs (and revised estimates for trial, which would need to be expanded to account for the testimony of all such Plaintiffs as set forth below).

**b. *Defendants' Position:***

Defendants oppose the selection of bellwether plaintiffs, particularly at this preliminary stage of the litigation, when the universe of potential plaintiffs remains unsettled and the parties have yet to conduct the discovery necessary to determine whether any proposed bellwethers are sufficiently representative of the broader plaintiff population.[2]

Plaintiffs only identified the selection of bellwether plaintiffs as a make-or-break issue for this scheduling order the night before the parties' joint deadline on October 23. Plaintiffs' proposal to fix a bellwether structure now, before the Court has ruled on Defendants' pending Motion to Dismiss (ECF No. 62) and before Plaintiffs have disclosed even basic information about their individual claims, is premature and would sacrifice fairness for Plaintiffs' expediency. It is both legally wrong and procedurally unnecessary to force this issue to be addressed now.

Plaintiffs just finished *opposing* Defendants' motion to stay discovery. As counsel for Plaintiffs put it at oral argument, Plaintiffs sought "discovery, period, merits and jurisdictional." Transcript of Motion Hearing 25:2-11, *Shalom v. Masri*, No. 1:25-cv-23837-DPG (Oct. 1, 2026). Now, Plaintiffs seek to stay discovery for the vast majority of litigants in this case—just not Defendants. Such a proposal is fundamentally unfair to Defendants, who should not be asked to choose "representative plaintiffs for bellwether discovery in a vacuum." *Adams v. Deva Concepts,*

[2] Defendants reserve all rights with respect to the arguments made in their Motion to Dismiss, including for lack of personal jurisdiction, and their Motion to Stay Discovery, and nothing herein shall constitute waiver.

*LLC*, 1:20-cv-9717-GHW, 2023 WL 6518771, at *3 (S.D.N.Y. Oct 4, 2023) (ordering plenary discovery to be conducted "pending later consideration of a possible bellwether trial process") (ellipses and citations omitted). The Court has already ruled that discovery will not be stayed in this matter, and Plaintiffs' effort to turn around and immediately seek to stay discovery for the vast majority of their own litigants should be denied.

"Courts should be wary of premature decision-making regarding the bellwether process: a case that appears to be favorable or representative early in the litigation process (when the pool is initially filled) may be eventually determined to be unrepresentative or grossly unfavorable once case-specific discovery is complete." *Id*. at *3 (quotation marks omitted). Here, the pool is not even filled. Defendants' dispositive arguments notwithstanding, the pending Motion to Dismiss also moves to dismiss foreign nationals, meaning some of the Plaintiffs who might otherwise be eligible for bellwether status could be dismissed from the case while discovery is ongoing.[3] At the same time, Plaintiffs have indicated herein that they are contemplating *adding* Plaintiffs via joinder. "Sufficient discovery should be conducted prior to selecting bellwethers." *In re Hyundai Vehicle Theft Litig.*, Case No. 8:22-ml-03052-JVS (KESx), 2024 WL 4415204, at *11 (C.D. Cal. July 2, 2024). Until the population of all Plaintiffs is fixed, it makes little sense to determine the identity of bellwether plaintiffs now.

In Anti-Terrorism Act cases specifically, courts have declined to set a trial structure before discovery has even begun. That is because restricting discovery would prejudice Defendants' ability to investigate claim-specific issues.[4] In *Miller v. Arab Bank, PLC*, No. 18-cv-4670, 2022

---

[3] Plaintiffs describe themselves as "342 American victims," but this characterization is disputed in the Motion to Dismiss, which challenges the standing of foreign-national plaintiffs.

[4] Defendants reserve their rights to respond in full to Plaintiffs' arguments and cases on a properly briefed motion under FRCP 42. Suffice to say that the cases Plaintiffs cite are distinguishable from this litigation and do not support adopting a bellwether structure that stays discovery for non-

WL 5264899 (E.D.N.Y. Sept. 26, 2022), some of the lawyers representing Plaintiffs in this case sought leave to file a motion bifurcating the trial in that case. The court held that it was "premature" to decide on a bifurcation trial structure on "Plaintiffs' claims because "developments in discovery" will no doubt help the Court to "consider the potential efficiencies and evidentiary difficulties presented by a joint trial." *Id.* at *2. As the court explained:

> Plaintiffs' counsel has chosen to bring these two related cases on behalf of large groups of plaintiffs alleging injuries suffered from many different alleged terrorist attacks. Having made that choice, Plaintiffs' counsel must be prepared to prove these cases in a manner that will be efficient for the Court and jurors—and not unfairly prejudicial to Defendant—and not simply in the manner that is most efficient for Plaintiffs' counsel.

*Id.* Here, too, Plaintiffs and their counsel have chosen to bring a large number of claims based on multiple attacks related to both October 7, 2023 "and its aftermath." Plaintiffs' assertion that a single bellwether verdict "will resolve the core liability issue for all Plaintiffs" does not account for complex liability questions that can indeed vary plaintiff by plaintiff, such as statutory standing or Defendants' alleged culpable participation with respect to specific acts or distinct terrorist attacks. Moreover, the unique facts of this case make a rushed bellwether process even less appropriate, and more prejudicial to Defendants. Unlike the ATA cases Plaintiffs cite, discovery of the Plaintiffs in this case is not limited to their individual injuries and damages. For one, it is a matter of public record that at least one Plaintiff knows Defendant Mr. Masri personally. Certain other plaintiffs are central to coordinated efforts across multiple proceedings that Defendants are entitled to examine in discovery. This suit also raises threshold questions regarding whether all of

---

selected Plaintiffs. *See, e.g.*, *King v. Habib Bank*, No. 20-cv-4322 (LGS) (S.D.N.Y.) (adopting bellwether order upon **joint** request of the parties); *In re Chiquita Brands International, Inc., Alien Tort Statute and Shareholder Derivative Litigation,* No. 08-md-01916-KAM, Dkt. No. 1361 at 3-4 (S.D. Fla.) (adopting bellwether proposal after years of discovery and case-specific development in an MDL).

the named Plaintiffs have statutory standing to bring an ATA suit, including confirming each named Plaintiff's authorization and capacity to sue.

Plaintiffs chose to bring this suit collectively "on behalf of a large group of plaintiffs alleging injuries suffered from many different alleged terrorist attacks," and also chose to pursue full merits discovery notwithstanding pending dispositive motions. *Miller*, 2022 WL 5264899, at *2. Defendants are sensitive to Plaintiffs' experiences as victims of terrorist attacks and intend to pursue discovery in a manner that preserves their privacy and does not cause undue burden, including through stipulations as to physical injuries to avoid the need for testimony, where appropriate, and protective orders shielding medical records from disclosure. To the extent that Plaintiffs have a proposal for a bellwether structure in this matter that accounts for Defendants' rights, they can make such a proposal to Defendants, and the parties can meet and confer, as required under the Local Rules. If the parties are unable to reach an agreement, Plaintiffs can file a motion under Rule 42 of the Federal Rules of Civil Procedure, which their attorneys have done in other cases. Accordingly, Defendants do not believe Plaintiffs' imposition of a December 14, 2026 deadline, which is not in the Court's form schedule, is necessary or appropriate.

**E. Necessity of Amendments to the Pleadings:** Plaintiffs' investigation into their claims is ongoing, and it is possible that additional facts will emerge. Plaintiffs will file any motion for leave to amend consistent with the Court's scheduling order and Federal Rules of Civil Procedure 15 and 16. Defendants reserve all rights to oppose such a motion.

**F. Possibility of Obtaining Admissions of Fact and of Documents, Electronically Stored Information ("ESI"), or Things Which Will Avoid Unnecessary Proof, Stipulations Regarding Authenticity of Documents, ESI or Things, and the Need for Advance Rulings from the Court on Admissibility of Evidence:** The parties have not discussed the possibility of

admissions or stipulations at this time, but they plan to meet and confer in an effort to narrow the issues in dispute.

**G. Suggestions for Avoidance of Unnecessary Proof and of Cumulative Evidence:** The parties will work diligently to avoid cumulative evidence and to streamline discovery information, including through good-faith conferrals on possible stipulations and/or admissions.

**H. Suggestions on the Advisability of Referring Matters to a Magistrate Judge or Master:** This Court has already referred all discovery matters in this action to Magistrate Judge Detra Shaw-Wilder (Dkt. No. 76).

**I. Preliminary Estimate of the Time Required For Trial:** The time required for trial in this matter will depend on the bellwether structure approved by the Court, if any. In Plaintiffs' preliminary view, should the Court adopt a bellwether structure, trial could be completed in approximately 15 trial days. Absent a bellwether structure, Plaintiffs believe trial would require 75-90 trial days. Defendants do not agree that a bellwether structure will necessarily save a material amount of trial time, including because successive bellwether trials for all plaintiffs will likely result in a far more extended cumulative trial period.

**J. Requested Date or Dates for Conferences Before Trial, a Final Pretrial Conference, and Trial:** The parties have submitted competing proposed scheduling orders with this joint report, including proposals for these dates.

**K. ESI Issues:** The parties intend to negotiate a protective order and ESI stipulation in good faith, and have each proposed a deadline in their proposed scheduling orders for submission of those proposals to the Court.

**L. Other information that might be helpful to the Court in setting the case for status or pretrial conference:** The parties will bring to the Court's attention such other information that might be helpful to the Court.

Dated: October 30, 2026

**PILLSBURY WINTHROP SHAW PITTMAN LLP**
By: /s/ *Markenzy Lapointe*
Markenzy Lapointe
Fla. Bar No. 172601
Markenzy.lapointe@pillsburylaw.com
600 Brickell Avenue, Suite 3100
Miami, Florida 33131
Phone: (786) 913-4831
Fax: (786) 913-4901

Carolina A. Fornos (admitted *pro hac vice*)
Christopher C. Caffarone (admitted *pro hac vice*)
31 West 52nd Street
New York, NY 10039
Phone: (212) 858-1000
Fax: (212) 858-1500
carolina.fornos@pillsburylaw.com
christopher.caffarone@pillsburylaw.com

Melissa Lesmes (admitted *pro hac vice*)
Waleed Nassar (admitted *pro hac vice*)
1200 17th Street NW
Washington, D.C. 20036
melissa.lesmes@pillsburylaw.com
waleed.nassar@pillsburylaw.com

*Attorneys for Defendants Bashar Masri, Palestine Real Estate Investment Company, Palestine Development & Investment Company, Palestine Industrial Estate Development Company, and Massar International, LTD.*

**STACK FERNANDEZ & HARRIS, P.A.**
By: /s/ *Brian J. Stack*
Brian J. Stack
Fla. Bar No. 0476234
255 Alhambra Circle, Suite 330
Coral Gables, Florida 33134
Telephone: 305.371.0001
Facsimile: 305.371.0002
bstack@stackfernandez.com
Secondary email: mwolf@stackfernandez.com

*Local Counsel for All Plaintiffs*

**WILLKIE FARR & GALLAGHER LLP**
By: /s/ *Lee Wolosky*
Lee Wolosky (admitted *pro hac vice*)
Andrew Lichtman (admitted *pro hac vice*)
Aaron E. Nathan (admitted *pro hac vice*)
787 7th Avenue
New York, NY 10019
Telephone: (212) 728-8000
Facsimile: (212) 728-8111
lwolosky@willkie.com
alichtman@willkie.com
anathan@willkie.com

**OSEN LLC**
By: /s/ *Gary M. Osen*
Gary M. Osen (admitted *pro hac vice*)
Aaron Schlanger (admitted *pro hac vice*)
190 Moore Street, Suite 272
Hackensack, NJ 07601
Telephone: (201) 265-6400
Facsimile: (201) 265-0303
gosen@osenlaw.com

aschlanger@osenlaw.com

**STEIN MITCHELL BEATO & MISSNER LLP**
By: /s/ *Jonathan Missner*
Jonathan Missner (admitted *pro hac vice*)
Robert B. Gilmore (admitted *pro hac vice*)
Kevin L. Attridge (admitted *pro hac vice*)
2000 K St., NW, Suite 600
Washington, D.C. 20006
Telephone: (202) 737-7777
Facsimile: (202) 296-8312
jmissner@steinmitchell.com
rgilmore@steinmitchell.com
kattridge@steinmitchell.com

**MOTLEY RICE LLC**
By: /s/ *John M. Eubanks*
John M. Eubanks (admitted *pro hac vice*)
Michael E. Elsner (admitted *pro hac vice*)
28 Bridgeside Blvd.
Mt. Pleasant, SC 29464
Telephone: (843) 216-9000
Facsimile: (843) 216-9450
jeubanks@motleyrice.com
melsner@motleyrice.com